ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
WILLIAM G. VOIT
Arizona State Bar No. 025808
Email: William.Voit@usdoj.gov
SHARON K. SEXTON
Arizona State Bar No. 012359
Email: Sharon.Sexton@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR 17-08242-001-PCT-DJH |
|---|---|
| Plaintiff, | |
| v. | Supervised Release Case No. CR 12-08212-001-PCT-DJH |
| Giordano Jackson, | **SENTENCING MEMORANDUM** |
| Defendant. | |

Defendant is before the Court to be sentenced for five new felonies, foremost of which is his brutal murder of Alvina Nez. Alvina was, by all accounts, a bright and beloved part of her family and her community. She was a loving daughter to her parents and a caring mother to her three children, ages 18, 15, and 11. Her death left a void in these lives that can never be filled. Alvina's murder was violent, cruel, unprovoked, and part of Defendant's lifelong pattern of senseless violence against innocent people.

Defendant should be sentenced to the statutory maximum term of imprisonment for each of his crimes: life on Counts 1 and 5, and ten years on Counts 2-4.

## **Defendant's Violent Crimes**

It is impossible to adequately describe the pain, terror, and degradation Alvina suffered the night of her murder in September of 2017. Alvina had endured prior domestic violence at Defendant's hands, so she knew full well the viciousness he could

and would unleash on her.  This must have run through her mind as Defendant took Alvina hundreds of yards into the remote, isolated field behind his house.  It was the middle of the night.  Defendant was armed with a machete, an unmistakable implement of death.  Alvina was totally defenseless, alone with him in the darkness.

In that field, Defendant mercilessly bludgeoned Alvina to death.  Her battered body would later bear silent witness to Defendant's brutality.  He inflicted over forty separate injuries, all over Alvina's body.  He shattered her nose.  He fractured her skull, pushing pieces of it into her brain.  He inflicted lacerations and contusions across her arms, her legs, her abdomen, her back, and her chest.  Eventually, Defendant hacked eight deep gashes, one by one, into the back of Alvina's head.

Then, Defendant sat next to Alvina's body and listened to her "gurgle" as she died.  As the medical examiner testified during trial, this was the gruesome and agonizing sound of a hemoaspiration pattern flooding her lungs.  It is no exaggeration to say that Alvina died breathing in, and drowning in, her own blood.

Defendant's callousness did not end with the murder.  He left Alvina's body in that field; disfigured, face down, in the dirt.  He left her there for the better part of a day.  And he left her there in sexually humiliated fashion.  Alvina's dead body was found covered in dirt, stripped of any shirt, her breasts uncovered, her pants and underwear pulled down, and her genitals exposed.  At trial, Lt. Lee of the Navajo Police Department described the sight as one of the most horrific he'd ever seen in all his years of service.

Defendant's vicious and degrading attack on Alvina the night of the murder was not an isolated event in their relationship.  Rather, it was a chilling echo of Defendant's prior domestic violence.  In July of 2017, Defendant savagely beat Alvina at her family's home.  He battered her in front of the eyes of two young children, one of them Alvina's 11 year-old son.  Defendant punched Alvina repeatedly and dragged her through the dirt.  The dragging was so forceful that Defendant tore chunks of Alvina's hair out by the roots.  When her father arrived to help, he found Alvina was not just injured and in great pain, but that she'd had many of her clothes torn off, down to her underwear.

In addition to his crimes against Alvina, Defendant also stands to account for his assault with a machete on two first responders, Officer Lambert Baldwin and Sgt. Mark Keams.  These police officers arrived during the night to investigate Alvina's death, answering the call to respond even though both were off duty and could have stayed home.  When Defendant advanced on them wielding his machete, swinging it back and forth and ignoring their lawful commands, he committed a dangerous offense against public order.  But he also committed a personal offense against both men, subjecting them to a mentally and emotionally harrowing ordeal that no one should have to face.

### **Defendant's Violent History**

Regrettably, violence is the defining feature of Defendant's history.  He has two prior felony convictions, both for violent assaults.  In 2005, he was sentenced to 6 years' custody for Aggravated Assault against an elderly couple, whose only offense was moving into Defendant's neighborhood.  The "72-year-old man and his wife were moving into a new apartment," and while the couple was backing a vehicle into their driveway, Defendant and a confederate "stuck their heads through the passenger side window and grabbed at the wife."  Defendant then "held a gun pointed at the husband's head" and "told the victims they were not going to move into the apartment because it was his neighborhood and he controlled it."  (PSR ¶ 58.)

In 2013, Defendant was sentenced to roughly 4 years' custody for Assault Resulting in Serious Bodily Injury for yet another violent attack.  In that case, Defendant approached the victim, who was simply minding his own business, and "hit him in the back of the head with a board."  The victim "attempted to flee, and Jackson tackled him," and as the victim struggled to escape, Defendant "stabbed [the victim] in the chest and stated he was going to kill" him.  The victim suffered a variety of serious injuries, including a punctured lung, among other knife wounds.  (PSR ¶ 60.)

It bears noting that Defendant, in addition to his felonies, has five prior misdemeanor convictions, which also do not exclude violence.  Defendant, for instance, has a Theft from a Person conviction; he "grabbed the victim's shirt and used threats of

force to rob the victim of his belongings." (PSR ¶ 57.) In fact, that robbery victim reported that Defendant "had just finished assaulting another individual," and "the other person had been beaten so badly that he thought he was dead." (*Id.*)

Defendant's violence does not even abate in prison. While serving lengthy prison terms for his felony assaults, he has repeatedly attacked other inmates, inflicted severe injuries upon his victims, and fashioned stabbing weapons to use for new assaults. For example:

- In one incident, Defendant teamed up with another prisoner to attack the victim. Defendant had no mercy; "[a]fter the victim was on the ground, the defendant continued to assault the victim."
- In a second incident, Defendant attacked another inmate, and "[a]fter being told to break up the fight, the defendant tossed a 7-inch sharpened steel blade into the yard." The victim suffered puncture wounds to the arm, upper torso, and neck areas. The victim's wounds were so severe that he had to be "air evacuated to a local hospital due to his injuries."
- In a third incident, during a search of Defendant's cell, staff found "a stabbing weapon that had been fashioned out of an eyeglass arm hidden in the defendant's shoe."
- In a fourth incident, Defendant attacked another inmate, after which "prison staff found a sharpened plastic weapon in the defendant's possession."
- In a fifth incident, Defendant attacked another inmate, and the authorities found at the scene "[t]wo homemade metal tipped weapons."
- In a sixth incident, Defendant was found in possession of a dangerous weapon, "[a]n ice pick style weapon," which the alert guards found before it could be used in yet another violent assault.

(PSR ¶¶ 58, 60.) All this is in addition to his other disciplinary infractions for gambling, tampering with security, threatening remarks against prison staff, fighting with another inmate, possession of tattoo making equipment, and property damage. (PSR ¶ 58.)

## Sentencing Recommendation

Life imprisonment is the mandatory sentence for Defendant's First Degree Murder conviction,[1] and the sentencing factors amply call for the statutory maximum sentence on all counts. 18 U.S.C. § 3553(a). The sentencing guidelines are "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also* 18 U.S.C. § 3553(a)(4). Those guidelines recommend a sentence of life imprisonment. (PSR ¶ 91.) In other words, the guidelines recommend the maximum sentence, which is life for Counts 1 and 5 and ten years for Counts 2-4.

The guideline recommendation of the statutory maximum is supported by the other sentencing factors. To say that the nature and circumstances of Defendant's offenses are serious is an understatement. 18 U.S.C. § 3553(a)(1). In isolation, each of his crimes is serious; in combination, they are among the most egregious that this Court will ever see. And Defendant's history is littered with victims from his prior violent felony assaults, both in and out of prison. *Id.* Given the brutal facts of this case and Defendant's long history of inflicting violence on others, any lesser sentence would fail to reflect the seriousness of the offenses, promote respect for the law, or provide just punishment. 18 U.S.C. § 3553(a)(2)(A).

Tellingly, Defendant was on federal supervised release for Assault Resulting in Serious Bodily Injury when he committed the murder, three assaults, and kidnapping for which he is now back before this Court. Which is to say, Defendant had no compunction about committing some of the most serious crimes in the federal code, on three separate occasions, even while under active court supervision for a previous violent assault. Defendant manifestly lacks any respect for the law, he requires the strongest measure of deterrence, and the community requires permanent protection from him. 18 U.S.C. § 3553(a)(2)(A)-(C).

---

[1] 18 U.S.C. § 1111(b) ("Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life"); *United States v. LaFleur*, 971 F.2d 200, 208 (9th Cir. 1991) ("We find the import of this language clear; a defendant convicted of first degree murder under § 1111(a) must be sentenced to life in prison. The express wording of § 1111(b) leaves the sentencing court no discretion to impose a lesser sentence.").

Additionally, the Court should consider not only what will deter this Defendant—clearly nothing but incapacitation will do—but also what is "necessary for general deterrence and to send a strong message." *United States v. Arenas*, 340 F. App'x 384, 387 (9th Cir. 2009); *see also United States v. Zakhor*, 58 F.3d 464, 467 (9th Cir. 1995) (general deterrence is a constitutionally legitimate sentencing consideration). Violent crime, particularly domestic violence, is a scourge upon our community. In the case of heinous crimes like these, perpetrated by a lifelong criminal like Defendant, the strongest sentences are necessary and should be applied.

Finally, the United States requests that Defendant be sentenced to the statutory maximum term of imprisonment for his violation of supervised release (24 months' custody), to run consecutive to his sentences in this new case. That is the usual course. *See* U.S.S.G. § 7B1.3(f). Consecutive sentences, even for persons serving a life term, still further important interests like reflecting the seriousness of the violation, promoting deterrence, and emphasizing the gravity of breaching the Court's trust. There is no graver breach of the Court's trust than to commit murder while on supervised release.

### Conclusion

The United States respectfully requests that Defendant be sentenced to the statutory maximum on all counts. For Counts 1 and 5 (First Degree Murder and Kidnapping), that is life. For Counts 2, 3, and 4 (two counts of Assault with a Dangerous Weapon and Assault Resulting in Serious Bodily Injury), that is ten years. The 24-month statutory maximum for Defendant's violation of supervised release should also be imposed, consecutive to his sentences in this new case.

RESPECTFULLY SUBMITTED this 14th day of February, 2019.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s William G. Voit*
WILLIAM G. VOIT
SHARON K. SEXTON
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David S. Eisenberg, Attorney for Defendant Giordano Jackson

*/s     Stephanie Ludwig*
U.S. Attorney's Office